Jack Thompson, alias Jim Thompson, v. The State.

No. 3600.    Decided June 2, 1915.

1.—Murder—Evidence—Impeachment of Own Witness.

Where, upon trial of murder, the State relied upon the evidence of a cer-
tain State's witness, which had been given in the examining trial, and which
she said was correct immediately before being placed on the witness stand,
and which related to the time that defendant got his pistol at witness' house,
and the witness testified to a different time as to when the said pistol was taken
from her house, there was no error in permitting the State to show that she had
been living with defendant's father-in-law and commented on that fact, and
the rule that the State could not impeach its own witness is not applicable to
the facts of this case.

2.—Same—Manslaughter—Charge of Court.

Where, upon trial of murder, the evidence did not raise the issue of man-
slaughter, an objection to the court's charge on that ground to the effect that
the provocation should not have been confined to the time of the commission
of the offense is untenable and need not be considered; however, the charge on
manslaughter shows no reversible error.

Appeal from the District Court of Tarrant.    Tried below before the
Hon. James W. Swayne.

Appeal from a conviction of murder; penalty, ten years imprisonment
in the penitentiary.

The opinion states the case.

*H. D. Wood* and *Sam S. Beene* and *A. W. Cameron,* for appellant.—
On question of impeaching own witness:  Skeen v. State, 51 Texas
Crim. Rep., 39; Ozark v. State, 51 id., 106; Williford v. State, 36
id., 414.

On question of court's charge on manslaughter:  Byrd v. State, 39
Texas Crim. Rep., 609; Stacy v. State, 48 id., 95; Brown v. State,
54 id., 121; Vick v. State, 71 Texas Crim. Rep., 50.

*C. C. McDonald,* Assistant Attorney General, and *Marshall Spoonts,*
County Attorney, for the State.—On question of court's charge on
manslaughter:  Miles v. State, 18 Texas Crim. App., 156; Alexander
v. State, 25 id., 260; Cockran v. State, 28 id., 422; Bracken v. State,
29 id., 362; Howard v. State, 23 id., 265; Bonner v. State, 29 id., 223;
Williams v. State, 7 id., 396.

On question of impeaching own witness:  Baum v. State, 60 Texas
Crim. Rep., 638, 133 S. W. Rep., 271; Brown v. State, 114 S. W. Rep.,
820; Jeter v. State, 52 Texas Crim. Rep., 212, 106 S. W. Rep., 371;
Harvey v. State, 37 Texas, 365.

On question of adequate cause and provocation:  Young v. State,
54 Texas Crim. Rep., 417, 113 S. W. Rep., 276.

PRENDERGAST, Presiding Judge.—Appellant was convicted of
the murder of John West and his punishment assessed at ten years in
the penitentiary.

The killing occurred between 5 and 6 o'clock in the evening of August 29, 1914, at the house of Bessie Williams (Joyce) in the City of Fort Worth. During said evening the deceased, appellant and perhaps two other parties were at the house of Bessie Williams, and all of them drank considerable alcohol and were pretty drunk. Bessie Williams was a prostitute. Deceased had kept her for some time. However, he had been away a short while, and for three or four days just before he returned, she said, appellant had stayed with her. He denied this. After carousing some time the other parties left Bessie Williams' place, leaving only Bessie, appellant and deceased there. According to the State's testimony, which was ample to establish that state of facts, about 5 o'clock that evening deceased got into a row with Bessie and slapped her down on the bed. Appellant asked him to desist, and deceased told him he hadn't anything to do with her, and then pushed him out of the house; that appellant then went about a mile from there to the house of May Kelly, where he claimed he had a room, procured his pistol, and after being gone about thirty minutes, returned to Bessie's, when, as testified by her, deceased was standing on her porch fixing to make a cigarette, she standing beside him; that when appellant got in fifteen or twenty feet from him, without deceased saying a word to him or making any demonstration whatever, appellant got behind a little tree, got his pistol out and immediately shot deceased four times,— twice in the left side under the heart, another two inches lower, and the other striking deceased in the right side above the hip bone; that when appellant began shooting, deceased turned and went back, or fell back into the house. He expired very soon thereafter. The appellant then fled.

The appellant claimed and so testified, that he went to Bessie Williams' with and at the instance and invitation of deceased that evening; that he had with him at that time his pistol, having gotten it from his room soon after dinner that day, and that he did not go and get it after his interference in the row between the deceased and Bessie. His version was that when he tried to separate Bessie and deceased when they began fighting that deceased, while they were in the house, grabbed up off of the table a butcher knife eight to ten inches long and attacked him with it; that he then pulled his pistol and began backing and backed out of the door with deceased following after him with the butcher knife, when he shot him the four times in self-defense; that he didn't know at that time he had killed him, but left immediately after the shooting; that after he first went to said house in the early part of the evening he did not leave there at all until after the killing.

The next day after the killing an examining trial of appellant was held. May Kelly testified therein. Her testimony was taken down in writing, which she signed and swore to. Just before this trial the prosecuting attorneys had her statement and consulted with her about her testimony. In effect, she told them that her written statement, which was read over to her at the time, was correct. The State on the trial introduced her as one of its witnesses. In her written statement

she had sworn that appellant came to his room at her house about 5 o'clock that evening and got his pistol and left her house. On this trial she went back on that statement and stated that the time he came and got his pistol was about 3 o'clock that evening instead of 5 or after. Thereupon, over his objections, the court permitted the State to prove by the prosecuting attorneys what had occurred between them and this witness just before they had placed her on the stand and also to prove by her that after the killing she went to Lampasas and lived several months prior to this trial with the family of appellant's father-in-law. Appellant showed that he was a married man, had two children, and that they visited her father at Lampasas and was with them some time. In the argument before the jury, the prosecuting attorneys commented on May Kelly's change of testimony and in connection therewith, the fact that she had lived with appellant's father-in-law after her testimony on the examining trial and before this trial. Appellant raises these questions by his bills Nos. 1, 3 and 4. We think the court's actions and rulings were correct.

It was a material question whether appellant got his pistol at his room at May Kelly's about 3 o'clock or whether he got it about 5 o'clock,—immediately before the killing. The statute is (C. C. P., art. 815) that a party introducing a witness may attack his testimony when facts stated by the witness are injurious to his cause, in every way except by proving the bad character of the witness. There can be no question but what the State relied upon said witness May Kelly testifying on this trial what she had expressly testified to on this point in the examining trial and which she had told them was correct immediately before they placed her on the stand. When she testified on the stand that appellant got his pistol at 3 o'clock instead of 5, then the State could attack, as it did, and show that she had been living with appellant's father-in-law and comment on that fact.

Appellant invokes the rule, which is well established, that it is error to permit the State to impeach its own witness where such witness merely fails to remember or refuses to testify, or fails to make out the State's case; that a mere failure to make proof is no ground for impeaching said witness. See Mr. Branch in section 866 of his work on Criminal Law, where he collates a large number of authorities to that effect; but that rule is wholly inapplicable here, as shown above. We deem it unnecessary to take up and discuss separately appellant's bills on this subject. What we have said disposes of all of them.

Appellant complains of one paragraph of the court's charge on manslaughter wherein he quoted the first subdivision of article 1129, Penal Code, that the provocation must arise at the time of the commission of the offense and that the passion is not the result of a former provocation.

In the first place, manslaughter is not raised by the evidence. The court should not have charged thereon at all. Only two issues were in this case,—murder as established by the State's testimony, and self-defense and that alone as claimed by appellant's personal testimony. Besides, there isn't the slightest testimony, even if manslaughter had

been raised, that shows any prior difficulty at all between appellant and deceased other than what occurred at the immediate killing according to appellant's testimony. But, in addition to this, the court expressly told the jury, in his charge on manslaughter, that in considering whether there was adequate cause, etc., this: "But in determining whether adequate cause did actually exist at the time of the killing, the jury may look to and consider all of the facts and circumstances in evidence occurring both at the time and prior to the time of the killing." So that, in no event, does the court's charge present any error.

The judgment is affirmed.

*Affirmed.*