**BRENT v. STATE.    (No. 7174.)**

(Court of Criminal Appeals of Texas.    March 21, 1923.    Rehearing Denied June 20, 1923.)

**1. Witnesses ⟐⟿383—Testimony of witness at former hearing held admissible to impeach her.**

In a prosecution for murder, where a witness called by the accused testified that after the homicide she told another that the deceased had told her that he was going to kill the accused, without any activity by the state's counsel in putting the evidence before the jury, permitting the state's counsel to show by cross-examination that she had testified at a prior hearing that she did not tell any one of the threat, except the accused's attorney, was not error, on the ground that the witness was impeached by a conflict in testimony on an immaterial matter.

**2. Criminal law ⟐⟿419, 420(11)—Testimony of threat by deceased against accused held hearsay.**

In a prosecution for a murder, testimony of a witness, equivalent to a statement that the morning after the homicide the witness told another person that the deceased had told the witness that he intended to kill the accused, was hearsay, and should have been rejected on objection.

**3. Witnesses ⟐⟿393(1)—State held to have right to impeach witness by showing contradictory testimony on former hearing.**

In a prosecution for murder, where a witness, who was on the scene shortly after the shooting, testified that the accused had a pistol in his hand, and that there was a pistol in the hand of the deceased, and that he saw blood on one of the accused's hands, which corroborated the accused's testimony, under Code Cr. Proc. 1911, art. 815, the state had a right to show that on a former trial the witness had testified that he did not see blood on the hands of the accused, for the purpose of impeachment.

**4. Homicide ⟐⟿250—Evidence held sufficient to support verdict of guilty.**

In a prosecution for murder, evidence *held* sufficient to support a verdict of guilty.

**5. Criminal law ⟐⟿1144(13)—Sufficiency of evidence to support conviction must be tested by state's testimony in support of verdict.**

The sufficiency of evidence to support a verdict of guilty must be tested by the state's testimony in support of the verdict; it being presumed that the jury believed the incriminating evidence.

On Motion for Rehearing.

**6. Witnesses ⟐⟿414(2)—Credibility of testimony may be supported by proof of statements made relative thereto before witness was subject to influence.**

When it is sought to be shown that the testimony of a witness is in any wise influenced, so as to cast doubt on its credibility, it may be supported by proof of statements made relative thereto before the approach of the influence.

Appeal from District Court, Galveston County; J. C. Canty, Judge.

E. Brent was convicted of murder, and he appeals. Affirmed.

Marsene Johnson, Elmo Johnson, Roy Johnson, and Marsene Johnson, Jr., all of Galveston, for appellant.

R. G. Storey, Asst. Atty. Gen., for the State.

MORROW, P. J.    The offense is murder; punishment fixed at confinement in the pen-

itentiary for a period of 25 years. The facts are not materially different from those set out on the former appeal (89 Tex. Cr. R. 544, 232 S. W. 845), save in the particulars mentioned hereinafter in connection with the bills of exceptions.

[1] Annie Kennedy, a negro woman, was one of appellant's witnesses. He proved by her that the deceased, a short time before he was killed by appellant, had threatened to kill the appellant; that she did not advise Brent of the threat, but on the morning following she did tell Paul Guyton about it. On cross-examination, as a predicate for impeachment, she was asked if she had not on the former occasion testified under oath that she had not told any one about the threat, but kept it locked in her breast. The witness, upon cross-examination by state's counsel, first stated that she did not remember whether she had said on the former trial that she had not told any one, except appellant's attorney, of the threat made by deceased, but, on refreshing her memory, she admitted that she did so testify on the former trial. As we understand the record, this admission was made after the witness had been handed by state's counsel the written transcription of her testimony upon the former trial. On redirect examination, she testified that after reading her testimony on the former hearing she still asserted that she told Paul Guyton of the threat the next morning, and told the attorney for the appellant that night. It seems, also, in the cross-examination by the state, that it was made apparent that the witness on the former trial did testify that she had told appellant's attorney of the threat. From the stenographer's notes upon the former hearing, if we understand the record, the witness testified on direct examination that she had told Paul Guyton of the threat the next morning and Mr. Johnson (appellant's attorney) that night. In the cross-examination upon that occasion, if we correctly comprehend it, she testified that she had told Mr. Johnson of the threat the night after the homicide, but had not previously told any one else about it. It thus appears that on the two occasions that the witness had testified—that is, upon the present trial and upon the habeas corpus hearing—she had declared that she had repeated the threat to Guyton, although, on her cross-examination on the former occasion, she had made a statement which was not in harmony with her direct examination. From this it is apparent that, taking her testimony upon both occasions, there appears no real conflict, in that it appears that on both this and the former occasion she did testify that she had repeated the conversation to both Guyton and Mr. Johnson. Appellant insists that, in permitting this procedure, the rule forbidding the impeachment of a witness upon an irrelevant or immaterial matter was transgressed. In applying the rule mentioned, the courts have always found difficulty in determining in particular cases when the testimony was material or collateral. See 2 Wigmore on Ev. §§ 1020, 1021, and 1023; also Branch's Ann. Tex. P. C. § 178.

[2] The statement of the witness is equivalent to this: "The morning after the homicide I told Paul Guyton that the deceased, shortly before he was killed, had told me that he intended to kill the appellant." This was hearsay, and on objection should have been rejected. The record does not reveal whether state's counsel made objection to it or not. In the condition in which the record comes, it is to be assumed that the trial court regarded the testimony as admissible, and that upon that theory he admitted it in evidence. Being in evidence, it is material testimony, in that it shows that the deceased had threatened to kill the appellant, and in that it supports and reinforces the testimony of the witness Kennedy to the effect that the deceased had told her that he intended to kill the appellant. It being in evidence without any activity upon the part of state's counsel in putting it before the jury, he was within his rights in controverting it by any available competent evidence. If it were shown that state's counsel acquiesced in the receipt of the testimony, his right to contradict it or controvert it, by impeaching the witness, would be doubtful. See 2 Wigmore on Evidence, § 1007. To counteract it he was privileged to show by cross-examination of the witness that the testimony in this respect was contradicted by the evidence given by the witness under oath upon a former trial. As stated above, there seems to have been revealed no real conflict between her former and her present testimony. Under these circumstances, we think, if the procedure complained of were of doubtful legality, the effort to impeach the witness, having practically failed, would not justify a reversal of the judgment.

[3] Johnson, a witness called by appellant, testified that he reached the deceased, who was a police officer, shortly after the firing of the fatal shots; that he found appellant with a pistol in his hand, and also a pistol in the hand of the deceased; that he took the deceased to the sanitarium and the appellant to the police station. On cross-examination, he testified that, after reaching the police station, he noticed the hands of the appellant and saw blood upon one of his hands. He was then asked if he had not testified on the former trial of the case that he did not see blood on the hands of the appellant. Upon his denial, the state reproduced his testimony given on the former trial, showing that he had testified that at that time he did not see blood upon the hands of the appellant. The testimony of the witness upon the present trial that he saw

blood upon the hand of the appellant was injurious to the state. It was corroborative of the appellant's testimony; it was contradictory of the testimony of the witness upon the former trial. The right to impeach the witness in the manner that it was done, we think, exists under article 815, C. C. P., and the construction that has been given that article by the decisions of this court in Blake v. State, 38 Tex. Cr. R. 384, 43 S. W. 107; Brown v. State, 55 Tex. Cr. R. 9, 114 S. W. 820; Thompson v. State, 77 Tex. Cr. R. 140, 177 S. W. 503; Vernon's Tex. Crim. Stat. vol. 2, p. 763.

[4] Appellant contends that the evidence is not sufficient to sustain the verdict of murder. A reproduction of the testimony in detail is deemed unnecessary. The dying declaration of the deceased was to the effect that he saw a man in the dark as he passed by; that he recognized the appellant, who said:

"You God-damned son of a bitch, I have been laying for you ever since you been on, and I am going to kill you."

The dying declaration proceeds:

"He was then shooting. * * * He shot me twice, and I fell; and he went up over me, and he shot me again, this time in the arm; and I said to him, 'What are you trying to do, kill me?' He said, 'Yes, you black son of a bitch, I am going to kill you and finish you up here.' * * * He took my pistol off me after I fell. No one was there, but a crowd came rushing up after that."

One witness testified that he heard two shots, and immediately went in his automobile at a rapid speed to the scene of the homicide; that while on the way he heard other shots; that upon his arrival the appellant was standing with two pistols in his hands—one in each hand. Another witness was awakened by the first shot; that he looked out, and saw one man shooting and another running; that the one running had his back to the other as he fell. After he fell, he said: "Oh! don't kill me! What do you want to kill me for?" The other man said: "You drew a gun on me," and continued shooting. Four or five shots were heard. The deceased had four gunshot wounds on his body—one in the right side behind, over the right hip; another over the left hip, behind; another in the back, on the right side, behind, just below the rib margin; and another in the left arm. The entrance of the wound in the back was behind the shoulder. Its exit apparently was in the abdomen on the right side.

Another witness testified that he was awakened by the firing of a gun; that he looked out of his window and heard the deceased holler, "Don't shoot me! don't kill me! I have a wife and child." The appellant stood over him and fired, apparently about four feet distant, and in about half a minute he shot again, and later fired shots. The deceased was still hollering, "Don't kill me!" As the deceased fell, appellant took his pistol away from him, and about that time an automobile arrived. Appellant said, "You are trying to kill me, are you?" Deceased said, "I ain't done you nothing." Deceased was lying on the ground during part of the shooting. Other like testimony was introduced. One of the witnesses said that he heard a man say:

"'Don't shoot any more, don't shoot any more!' that he heard another shot fire, and then one said, 'You son of a bitch, there is no use trying to pull a gun on me.'"

When arrested, all the chambers in appellant's pistol had been fired. None of those in the pistol belonging to the deceased had been fired.

Appellant introduced testimony showing that the deceased had made threats directly to him and to others, who had communicated them. He also described the encounter thus: That he was on his way home, and, on seeing the deceased, he approached him. As he did so, the deceased called him and inquired as to why he was out that time of the night; that he (appellant) replied that he was in the service car business, and was liable to be out at any time; that this he spoke in a friendly manner, and as he spoke the deceased drew his pistol and struck him. Appellant asked him if he meant to kill him, and deceased said, "Yes; nothing else." The first blow that the deceased hit him, appellant caught with his hand, between his thumb and forefinger, which resulted in pain and bloodshed; that he next hit him on the neck. It was against this attack that the appellant fired. The deceased fell and said: "I am shot; get an ambulance." He further said: "Don't shoot me! What do you want to shoot me for?" Appellant said: "What did you want to shoot me for? What were you pulling a pistol on me for?" At that time an officer arrived, and appellant was put under arrest. He denied taking the pistol away from the deceased; he also denied any intent to kill him.

[5] The sufficiency of the evidence to support the verdict of murder must be tested by the state's testimony in support of the verdict. It is the presumption that the jury believed the incriminating evidence. We have not set out all of either the testimony of the state or of the appellant. It is voluminous, and it is unnecessary to set it out in detail. Suffice it to say that the state's testimony, if believed, was sufficient to support the verdict.

Finding no error justifying a reversal, the judgment is affirmed.

### On Motion for Rehearing.

LATTIMORE, J. On direct examination appellant brought out from his witness Annie Kennedy the fact that deceased had made to her on the afternoon preceding the killing a serious threat against the life of appellant and one Guyton, and that while she had not communicated this to appellant before the homicide, she did tell Guyton of such threat the morning following. In his motion for rehearing, appellant complains only of the action of the trial judge in allowing the state, upon cross-examination of said witness, to show that on a former trial of this case she had testified that she never told Guyton of said threat. The manner of this examination is set out at some length in our original opinion. The state first asked witness if she did not testify on said former trial, and upon an affirmative answer proceeded to show her a statement of her former evidence, following which she admitted that she did testify on said former trial that she had never told Paul Guyton of the threat referred to. Later in her testimony she reaffirmed; however, that, notwithstanding her testimony on the former trial, she had told Guyton of said threat the morning after the killing. Thereupon the state's attorney introduced in evidence from the stenographer's notes of said former trial the fact that she then denied that she had told the fact of such threat to Guyton.

We are not prepared to hold, upon reflection, that any error was committed by the trial court in this matter. While the statement of Annie Kennedy of the fact that she had told Paul Guyton of this threat might have been the subject of objection when offered in direct testimony, still it had a tendency to support her testimony that the threat was in fact made to her by the deceased, and her statement of the fact that she told this to Guyton would probably be held admissible upon rebuttal or on redirect examination, provided the state had sought to show, as it did, that this witness claimed to have heard a threat only after she had a conference with appellant's attorneys.

[6] When it is sought to be shown that the testimony of a witness is in any wise influenced, so as to cast doubt upon its credibility, same may be supported by proof of statements made relative thereto before the approach of the said influence. The appellant having seen fit to introduce this testimony, possibly in anticipation of the cross-examination by the state, or possibly for the purpose of supporting the claim of the witness that the threat had been made to her, in the event no objection was made thereto, we think the state entitled to produce the testimony that it did for the purpose of affecting the credibility of the witness. The matter is not wholly collateral, but under certain circumstances might become very material.

We are of opinion that the case was correctly decided, and the motion for rehearing will be overruled.