## MONROE KIEL V. THE STATE.

No. 17541. Delivered April 24, 1935.
Appeal Reinstated May 29, 1935.
Rehearing Denied June 26, 1935.

100

The opinion states the case.

*E. T. Simmang* and *Richard W. Mayfield, both* of Giddings, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is rape; the punishment, confinement in the penitentiary for ten years.

The caption of the transcript shows that the court convened on the 16th of April, 1934, and adjourned on the 12th of May, 1934. It appears that the judgment of conviction was entered on the 25th of October, 1934, and that on November 2, 1934, appellant entered into recognizance on appeal. The proceedings not appearing to have been had during the term of court manifested by the caption, the appeal must be dismissed. Hildebrand v. State, 29 S. W. (2d) 774; Sherwood v. State, 225 S. W., 1101.

The recognizance is fatally defective in that it fails to recite that appellant binds himself to abide the judgment of the Court of Criminal Appeals of the State of Texas. Neeley v. State, 22 S. W. (2d) 138, and authorities cited. The form of recognizance on appeal is set out in Art. 817, C. C. P.

Appellant is granted fifteen days from this date in which to perfect his appeal.

The appeal is dismissed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON REINSTATEMENT OF APPEAL.

CHRISTIAN, JUDGE.—The record having been perfected, the appeal is reinstated and the case considered on its merits.

Prosecutrix, Hattie Simek, who was between 15 and 16 years of age, attended school in the town of Dime Box, where appellant was employed as a teacher. On the 6th day of May, 1933, Bettie Mareck, James Sample and appellant drove in appellant's automobile to the city of Austin for purpose of attending a school meet. They returned to Dime Box on the same day, reaching there about 7:30 p. m. Prosecutrix lived about three miles from Dime Box. According to her version, appellant took Bettie Mareck and James Sample home first. Before reaching her home she and appellant got out of the car and had an act of sexual intercourse. She testified further that appellant had frequently written her notes during the time she was his pupil. Several of these notes were introduced in evidence by the State after witnesses had testified that they were in appellant's handwriting. We quote one of the notes as follows:

"Dearest: Please tell me what is wrong this a. m. I know you are not happy. Have I done anything wrong? I want to take you home this p. m. very much. Stay here at the school house until I come back. It will only be a few minutes. Slip me a short note with your His. exam paper."

Prosecutrix testified that after she became pregnant appellant sent her to Dr. Burns; that prior to that time appellant had given her some pills; that, in effect, appellant told her to state that others had had intercourse with her; that she told Dr. Burns that a negro had raped her. She testified further that she had told appellant during the time she was associating with him that several boys, whom she named, had had sexual relations with her. She declared, however, in response to questions by counsel for both sides, that appellant was the only person who had ever had an act of intercourse with her, and that the statements she had made concerning her relations with others were false. Touching this matter she testified, in part, as follows: "Well he (appellant) framed up the story. He

told me not to give him in to my parents. When I made these statements, that was after this first act of intercourse with Monroe Kiel; about—in August. This first act of intercourse took place in May, and it was August that I told these things, and Monroe Kiel framed the story for me to tell. Yes, sir; it wasn't the truth about the negro raping me, but he told me to tell my parents. It was the truth I told him, but the fact is not the truth. I told Dr. Newton some time in September; I told my parents about two weeks before I saw Dr. Newton."

Testifying in his own behalf, appellant admitted that prosecutrix had accompanied him to Austin on the occasion in question, but denied that he had any improper relations with her. Moreover, he denied that he had written the notes the State introduced in evidence. He testified that after taking James Sample home he came back with prosecutrix to his own home and got his wife; that his wife then accompanied him to the home of prosecutrix, where they left her; that it was only a few minutes after Sample had left the car before he returned to his own home. He admitted that he passed his home with James Sample and prosecutrix in the car, and testified that he did not know why he did not stop at that time and get his wife. Appellant's wife gave testimony to the effect that she accompanied appellant when he carried prosecutrix home.

We are unable to reach the conclusion that the evidence is insufficient.

It is shown in bill of exception No. 9 that prosecutrix had testified, in response to questions by counsel for appellant, that she had told appellant that several boys had had sexual relations with her and further that she had told Dr. Newton and Dr. Holloman that she had had intercourse with a negro. Upon redirect-examination she was asked, over appellant's objection, the following question: "Were these things the fact?" Her reply was that she had never had intercourse with any other person except appellant, and that her statement concerning her relations with others was false. We think this testimony was relevant and material. Clearly the witness had the right to state that her declarations were false and to give her reasons for having made same.

It is shown in bill of exception No. 12 that when appellant's counsel was interposing certain objections to testimony the district attorney said to him, in the presence of the jury, "You object to the indictment too, don't you?" Appellant objected to the remark. The bill of exception recites that the court failed to rule on the objection and failed to instruct the jury to dis-

regard the remark. While the statement was improper, we are not impressed with the view that it was of such a nature as to prejudice appellant's rights.

It is shown in bill of exception No. 14 that, over appellant's objection, prosecutrix was permitted to state her reasons for making false statements as to her relations with other men. Appellant had elicited from prosecutrix the fact that she had told him that she had intercourse with other men. Under the circumstances, we think it was proper for the State to show why the witness made the statements and that same were false.

It is shown in bill of exception No. 15 that counsel for the State used language as follows in his argument to the jury: "What if this had happened to your mother when she was a litte child?" Appellant objected to the statement and the court instructed the jury not to consider it for any purpose. Under the circumstances, we think the bill fails to present reversible error.

We have not undertaken to discuss all of the bills of exception brought forward. A careful examination of appellant's contentions leads us to the conclusion that reversible error is not presented.

The court failed to make application of the Indeterminate Sentence Law. The sentence is reformed in order that it may be shown that appellant is condemned to confinement in the penitentiary for not less than five nor more than ten years.

As reformed, the judgment is affirmed.

*Judgment reformed and, as reformed, affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant challenges the sufficiency of the testimony. Many assertions appear in the motion regarding things that the State could have proved and did not, and the failure to prove which should be taken by this court as evidence of the falsity of the claims of the prosecuting witness to have been raped and to have become pregnant, etc. etc. The statement of facts in this case was prepared by a court reporter who seems to have taken down in some instances, at some length, the objections that were made throughout by the attorneys for the appellant, and these objections so written out are a part of said statement of facts, which has been agreed

to by the attorneys for the State and appellant, approved by the court and filed as a part of the record in this case. We do not care to take up the time and space by setting out the many objections that were made by appellant to any and everything that occurred relating to appellant and to prosecuting witness after the date of the alleged rape on May 6, 1933, but such objections, sustained as many of them were, would seem to amply account for the absence from the record of the facts referred to in the motion for rehearing. Appellant asserts that there was no proof of the pregnancy of the girl as claimed by her to have resulted from intercourse with appellant. She testified after this act of intercourse in May, 1933, which she repeatedly refers to as the "First act" with this appellant, he sent her in August or September to the doctor, after he had given her some Epsom salts, pills, etc. Appellant seems to have objected to what took place at the office of the doctor, but we note in the testimony of Dr. Burns the following: "When she called on me *in this condition,* I think that was in September,—in September or October, last year, 1933."

Some affectionate and suggestive notes were introduced in evidence and testified as being in the handwriting of the appellant. The record shows also that the State introduced a young woman who had gone to school to appellant and had seen him write, and who produced a document containing nine points of instruction, which she said was in the handwriting of appellant. This document was introduced in evidence. Under our practice the jury are given the right to make comparisons of handwriting, as well as experts and other persons.

We have again gone over the testimony of the girl in this case and that of each of the other witnesses, and have examined the objections made, and the rulings of the court as reflected in the statement of facts. We are still of opinion that the facts are sufficient, and that we would be doing violence to the command of our Legislature, to let the jury pass upon the facts, if we undertook to set aside this conviction.

The motion for rehearing with be overruled.

*Overruled.*