## M. D. CARTER v. THE STATE.

No. 19131.   Delivered November 17, 1937.
Rehearing denied April 27, 1938.

The opinion states the case.

*Joe Strode,* of Conroe, *Gordon Burns,* of Huntsville, *C. C. McDonald,* of Wichita Falls, and *Mayfield, Grisham & Grisham,* of Tyler, for appellant.

*Dan Moody,* of Austin, and *Russell Allen* and *W. B. Harrell,* both of Dallas, amici curiae.

*Fullbright, Crooker & Freeman,* and *C. A. Leddy,* all of Houston, amici curiae.

W. C. McClain, District Attorney, and Nelson Jones, both of Conroe, and Lloyd W. Davidson, State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of the offense of conspiring to commit forgery, and his punishment was assessed at confinement in the State Penitentiary for a term of two years.

Appellant's first contention is that the court erred in declining to sustain his motion to quash the indictment upon the various grounds therein stated. The indictment contained four counts, but the court submitted the cause to the jury upon the first and fourth counts only. Appellant was found guilty under the fourth count. Consequently, all objections to the first three counts pass out of the case and we need consider only the sufficiency of the fourth count.

It is charged in said count that on or about the 18th day of October, A. D. 1935, Otis Gibson, H. E. Hines, D. D. Feldman, Frank Bennett, Oren C. Roberts, M. D. Carter, A. N. Adelson, and L. R. Hepworth did unlawfully conspire, combine, confederate, and enter into a positive agreement, together and between themselves, to commit a felony, in this, to-wit:

The said defendants did then and there conspire, combine, confederate, and enter into a positive agreement together and between themselves to without lawful authority and with intent to defraud, knowingly use a forged tender of the Railroad Commission of Texas, relating to crude petroleum oil to induce another, to-wit: Channel Transport and Marketing Company, an incorporated company, to transport and handle crude petroleum oil; which tender, if genuine, would be a written permit for the transportation of such oil, issued under the authority of the said Railroad Commission of Texas; which said forged tender was a purported tender to which had been forged without lawful authority and with intent to defraud, the name of an agent of the Railroad Commission of Texas, to-wit: The name of E. L. Green, Jr., who was then and there an agent of the said Railroad Commission; and the said forged instrument in writing, on or about said date, had been made without lawful authority with intent to injure and defraud, and purported to be the act of said E. L. Green, Jr., agent, as aforesaid; and such permit is commonly known as a tender as said defendant then and there well knew, and said conspiracy was then and there agreed to be executed in Montgomery County, State of Texas, where said oil was then and there situated, and where said oil was agreed to be handled by and under the authority of said forged tender, etc.

Appellant's contention is that the conservation statute relating to oil, etc., is in contravention of the Federal and State Constitutions, and that it also contravenes the anti-trust laws. We do not deem it necessary to enter a discussion thereof because said law has been upheld not only by the courts of this State, but also by the Federal courts. See Brown, et al., v. Humble Oil & Refining Co., 83 S. W. (2d) 935; State v. Blue Diamond Oil Corporation, 76 S. W. (2d) 852; Atlas Pipe Line Company v. Sterling, 4 Fed. Supp. 441.

Appellant further contends that the court erred in declining to sustain his motion to quash the said fourth count, on the ground that it was not averred therein that the Railroad Commission had theretofore, under and by virtue of the statute, made any rule or order requiring a tender or permit to ship or transport any oil, and that such rule or order had been promulgated by publishing a complete copy of same in three newspapers of general circulation in the State of Texas, once each day for three consecutive days, as provided by Section 5 of Article 1 of an Act of the Legislature approved on the 11th day of May, 1935. This section provides, among other things, that no criminal action shall be maintained against any person involving the violation of any provisions of any rule, regulation, or order pursuant to any statute of this State, until the commission shall have promulgated such rule, regulation, or order by publishing a complete copy of same, etc.

Subsection (d) of Section 4 of said article provides: "Every person who shall knowingly ship or transport or cause to be shipped or transported, * * * oil * * * without authority of a tender shall be punished by a fine of not less than Fifty Dollars ($50), nor more than Two Hundred Dollars ($200)."

If this prosecution were based upon an act of the defendant in shipping and transporting oil without a permit, there might be merit in his contention, but this prosecution is based upon a violation of Article 1111c, Penal Code, which reads as follows: "Whoever shall forge the name of any agent, officer or employee of the Railroad Commission of Texas to a permit or tender of the Railroad Commission of Texas relating to crude petroleum oil or natural gas, or any product or by-product of either, or who shall forge the name of any person to such tender or permit, or who shall knowingly use such forged instrument to induce another to handle or transport any crude petroleum oil or natural gas or any product or by-product of either, shall be con-

fined in the State Penitentiary not less than two (2) nor more than five (5) years."

It is apparent that Section 5 of said Article 1 has reference to the preceding section and subsection of said article, because subsection (d) of Section 4 makes it a misdemeanor for any person who shall knowingly ship or transport or cause or permit to be shipped or transported by any pipe line, railroad, barge or boat, any oil without authority of a tender—shall be punished by a fine.

The offense with which appellant is charged in the instant case is not for shipping or transporting oil without a permit, but for conspiring to forge and use a forged instrument, an entirely different act than that denounced by Article 1, Section 4, supra, constituting an entirely different offense, and for which a different penalty is prescribed. Consequently, Section 5, above referred to, has no application to the instant case. Roco Ref. Co. v. State, 94 S. W. (2d) 1214.

Appellant further contends that the alleged instrument declared upon can not form the basis of a forgery, unless the necessary prerequisites which would make it a valid instrument had been complied with in reference to the adoption of an order, and the publication thereof. In the case of Jones v. State, 130 S. W. 1012, this Court, speaking through Judge DAVIDSON, said: "An instrument valid on its face is equally the subject of forgery, although collateral or extrinsic facts may exist which would render it absolutely void if genuine."

This legal principle was first announced by this Court in Costley v. State, 14 Texas App. 156, and subsequently followed in the case of Tracy v. State, 90 S. W. 308, and Richards v. State, 29 S. W. (2d) 367. Bishop on Criminal Law, Vol. 2, Section 533, lays down the following rule: "The false writing must be such as, if true, would be of some like or apparent efficacy, since otherwise it has no tendency to defraud; in other words, it must either be in fact, or must appear to be, of legal validity, but it need not have both the appearance and the reality." He cites many authorities in support of the text. The same author further states: "Since men are not legally presumed to know the facts, a false instrument, good on its face, may work a fraud, though extrinsic facts show it to be invalid even if it were genuine; therefore, there may be a forgery of such an invalid instrument." Again, he says that "It is no defense to a charge of forging a bank bill that the bank never issued bills of the denomination forged."

Consequently, the want of validity must appear on the face of the written instrument to relieve it from the character of forgery. In the instant case, the tender or permit purports on its face to be the act of an agent of the Railroad Commission, and if false, constitutes forgery, though extrinsic facts may show it to be invalid.

Appellant makes an attack upon the validity of Article 1111c, Vernon's Texas Penal Code, on the ground that it is too uncertain and indefinite, without properly defining the words "permit," "forgery," and "forged instrument," and cites us to Article 6, Penal Code, which reads as follows: "Whenever it appears that a provision of the penal law is so indefinitely framed or of such doubtful construction that it can not be understood, either from the language in which it is expressed, or from some other written law of the State, such penal law shall be regarded as wholly inoperative."

We do not concur in the position taken by the appellant that the law relative to forgery of a tender or permit is so indefinitely framed or of such doubtful construction that it can not be understood, either from the language in which it is expressed, or from some other written law of the State.

The word "tender" is defined by Article 6066a, Section G, Civil Statutes, as follows: "The word 'tender' shall mean a permit or certificate of clearance for the transportation of oil or products approved and issued, or registered under the authority of the Commission."

Article 6029, subd. (8), Civil Statutes, relating to the duties of the Railroad Commission to conserve the oil, reads as follows: "It shall do all things necessary for the conservation of crude petroleum oil and natural gas and to prevent the waste thereof, and shall make and enforce such rules, regulations or orders as may be necessary to that end."

Subdivision (9) provides for the issuance of permits, tenders, and other evidence of permission when the issuance of such permits, tenders, or permission is necessary or incident to the enforcement of its rules, regulations, or orders for the prevention of waste.

The foregoing statute was passed at the same session of the Legislature, and should be considered in aid of the definitions of the terms used in Article 1111c, Penal Code. This Court has held that it will, if necessary, resort to the civil statutes as well as to the Penal Code, for the purpose of giving a meaning to language which appears in criminal statutes. See Compere v. State, 295 S. W. 614; Wilson et al. v. State, 36 S. W. (2d) 733.

Article 8, Penal Code, provides as follows: " * * * All words used in this Code, except where a word, term or phrase is specially defined, are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject matter relative to which they are employed."

Looking to the context of the subject matter relative to which the term "forgery," and "knowingly used such forged instrument" are employed in the act, it occurs to us that one accused of using a forged tender to induce another to transport oil would know the particular offense with which he is charged and such as would enable the court to pronounce the proper judgment. The Legislature in enacting Article 1111c, Penal Code, was creating a law, and in doing so, must have intended to use the terms "forgery" and "knowingly used such forged instrument" in the sense in which they were used in other written statutes, and in the sense in which they are understood in common language, and as defined by Webster's International Dictionary, as well as by the Century Dictionary, which defines the word "forge" as follows: "To fabricate by false imitation."

The common law defines "forgery" as: "The false making or materially altering, with intent to defraud, any writing which if genuine might apparently be of legal efficacy, or the foundation of legal liability."

In construing a statute, we must give it that meaning which will conform to the scope of the act, and carry out the purpose of the act, seeking to remedy the evil or the mischief which it was intended to remedy.

In the case of Longoria v. State, 71 S. W. (2d) 268, this Court said: "We further observe that in accordance with settled rules of interpretation of statutes, even when the language used is susceptible of two meanings, the courts are to give it that meaning which will conform to the scope of the act and carry out the purpose of the statute."

Applying the foregoing rule in construing the statute in question, we are of the opinion that it leaves no doubt as to the meaning of the words employed therein. We have examined the case of Hallman v. State, 18 S. W. (2d) 652, and the many other authorities cited by appellant in support of his propositions, but do not think they are applicable here. They seem to us to be easily distinguishable from the case under consideration.

Appellant also insists that the law under which the prosecution was initiated and maintained, is void and ineffective, because the Legislature by H. B. 581, Chap. 246, enacted by the 44th Legislature, delegated legislative authority to the Railroad Commission, in that the commission might, by adopting orders, rules and regulations, and by publishing the same, create laws penalizing any person for violation thereof.

The people of this State, by adopting Section 59 of Article 16 of the Constitution, provided for the conservation of the natural resources of this State, and authorized the Legislature to pass such laws as might be appropriate thereto. In pursuance of said constitutional provision, the Legislature enacted Title 102, conferring upon the Railroad Commission the power and authority claimed by the appellant to be a delegation of legislative powers.

The same Legislature passed House Bill No. 782 (Acts 1935, Chap. 76), re-enacting and extending the conservation provision of Title 102, authorizing the Railroad Commission to make and enforce rules and regulations for the conservation of crude oil and natural gas, and to provide for the issuance of permits, tenders, and other evidence of permission, when the issuance of such permits, tenders, or permission is necessary or incident to the enforcement of its rules, regulations or orders for the prevention of waste.

Article 6029, Revised Civil Statutes, prescribes the rules and regulations the Commission shall make for the conservation of crude petroleum oil and natural gas, and to prevent the waste thereof.

Appellant's contention is that the Legislature, by the enactment of the statutes brought in question, delegated legislative authority and conferred the same upon the Railroad Commission. We are of the opinion that the contention is not sustained by the weight of authority in this State. In the case of Ex parte Leslie, 223 S. W. 227, this Court, speaking through Judge MORROW, said: "Judicial sanction has often been given to the exercise of power to, by law, prescribe the punishment for the violation of the regulations of a board or commission, upon the theory that, observing proper limitations, such an act is not obnoxious to the principle denying to the legislature the power to delegate its authority."

He cites in support thereof the following: U. S. v. Grimaud, 220 U. S. 506; State v. Railway, 56 Fla. 617; Whaley v. State, 168 Ala. 152; R. C. L., Vol. 6, p. 183.

The authority of the Railroad Commission to make rules and regulations to conserve the natural resources of the State and to enforce the same, prescribing the means and measures to be employed, is not an exercise of legislative function, but administrative in its operation and application. See Commonwealth v. Wilson, 25 American State Reports 528. We therefore overrule appellant's contention.

In the brief filed herein by amici curiae, it is strenuously contended that the indictment is too vague and uncertain to apprise appellant of the nature of the accusation against him, in this: That it is not clear from the language therein contained whether it was the purpose of the pleader to charge a conspiracy to violate Article 996, P. C., by using a tender that had been falsely made within the meaning of Article 979, P. C., the general forgery statute, or to charge a conspiracy to violate Article 1111c, Vernon's Penal Code. After careful study of the fourth count in the indictment, on which the appellant was found guilty, we reach the conclusion that it sufficiently charged a conspiracy to commit a felony, an offense denounced by Article 1111c, Vernon's Penal Code. The article last mentioned is a separate and distinct statute, designed and enacted by the Legislature to prevent and prohibit an evil, to-wit: The making and use of forged tenders, and prescribing a punishment therefor, without reference to Articles 996, 979, 1006, or Article 1680, Penal Code. But if it be conceded that the indictment contains language which is embraced in Articles 996 and 979 of the Penal Code, this would not necessarily vitiate the indictment. The latter articles mentioned do not seem to have the exclusive right to the use of the language therein contained. If such was the case, the Legislature might not, for the want of language which had not theretofore been pre-empted by some statute, be able to enact a valid law, and as a result much mischief would be committed within the confines of our great State. The Legislature enacted Article 1680, making it an offense to forge the name of any agent of a railroad company to a bill of lading with intent to defraud, etc., as a special statute, designed and enacted to prevent evils therein specified, and the Legislature likewise enacted Article 1111c, Vernon's Penal Code, for a specific purpose. In view of the fact that we deem the indictment sufficient to charge the offense, it would serve no useful purpose to discuss any of the many other attacks made upon it.

We do not deem it necessary to discuss each of the 100 or more of the bills of exception, complaining of the admission of testi-

mony, because many of them fail to set forth enough of the attendant facts and circumstances within themselves, to show the inadmissibility of the testimony complained of. Others show that part of the testimony objected to was admissible, and appellant fails to separate that which is claimed to be inadmissible from the admissible, and direct his objection to the claimed inadmissible part thereof. Still others are multifarious, and many are without merit.

Bills of exception numbers 3 and 5 complain of the introduction in evidence of certain orders, schedules, tenders, etc., of the Railroad Commission, duly certified as required by law, on the ground that the same were not filed three days before the trial and notice given thereof to the appellant; that the same were mere copies and not the originals. Article 3720, Revised Civil Statutes, provides as follows: "Copies of the records and filed papers of all public officers and custodians of records of minutes of boards, etc., * * * shall be prima facie evidence in all cases where the original records would be evidence."

The orders, tenders, and schedules not being such instruments as are required by law to be recorded, it was not necessary that they be filed among the papers of the case for three days prior to the trial and notice given thereof. Boyd v. State, 21 S. W. (2d) 733.

Bill of exception number four complains of the testimony of B. F. Biggers, to the effect that he knew Otis H. Gibson, one of the defendants; that he was familiar with his handwriting; that he saw him write the instrument offered by the State as a standard for comparison of handwriting. Appellant objected thereto because it had not been filed with the papers of the case and notice thereof given. We think this testimony was clearly admissible for the purpose for which it was offered. See Article 731, C. C. P.; Jones v. State, 73 Texas Crim. Rep. 152; Caldwell v. State, 28 Texas App. 566; Fry v. State, 215 S. W. 560; Rose v. State, 62 S. W. (2d) 121; Kiel v. State, 83 S. W. (2d) 680.

Bills of exception 6, 7, 18, and 66, complain of the introduction in evidence of certain written instruments referred to as "SW-1," "SW-2," and "SW-3" tenders, together with an explanation by E. L. Green, Jr., of the letters and figures thereon. Appellant objected because there was no allegation in the indictment setting out the instrument, together with proper innuendoes, etc.

We are of the opinion that it was proper for the witness to explain the meanings of the terms in order to make it intelli-

gible to the jury. Similar questions were before this Court in a number of cases, and were decided adversely to appellant's contention. See Jònes v. State, 35 Texas Crim. Rep. 565; Novy v. State, 62 Texas Crim. Rep. 492; Ex parte Fischl, 51 Texas Crim. Rep. 63.

Bill of exception number 8 complains of the admission in evidence of a certain instrument denominated "tender SW-3, No. 3830." Appellant objected for the following reasons: (1) Because it was not proved, as at common law; (2) it was not filed and notice thereof given; (3) it was incompetent; and (4) no conspiracy had been shown between appellant and the other parties.

Some of the objections urged against the admission of the tender are discussed in disposing of preceding bills, and decided adversely to appellant's contention. To the objection that no conspiracy had been shown at the time the instrument was offered as evidence, we deem it sufficient to say that the bill, in and of itself, is incomplete in that it fails to bear out the truth of appellant's objection. Moreover, the defendant may not direct the order in which the State may offer its testimony.

Bills of exception numbers 9, 11, 12, 13, 16, 17, 20, 21, 22, 23, 25, 26, 27, 28, 29, 36, 39, 44, 45, 47, 54, 55, 57, 61, 69, 78, 79, 80, 81, and 82, are deemed to be without merit.

Bills of exception numbers 10, 14, 17, 28, 30, 31, 32, 33, 35, 37, 46, 48, 49, 53, 56, 59, and 70, are all qualified and as thus qualified, fail to reveal reversible error.

Bill of exception number 15 complains of a certain cashier's check issued on April 18, 1936, by the City State Bank and Trust Company of McAllen, Texas; in the sum of $800, payable to the order of M. D. Carter, and also the following line from the record of the said bank, to-wit: "April 18, 1936," and by whom purchased "self."

Appellant objected on the ground that the same was irrelevant, immaterial, and incompetent for any purpose, and that witness himself, had not issued the check or made a notation on the bank record.

The objection is entirely too general. The witness was the vice president of the bank, the official custodian of the records of said bank, and testified that Miss Sally, an employee of the bank, made out the check; that the entries were made under his direction and supervision and were correct. We think it was permissible for the witness to testify that Miss Sally made out the bank check, and that the entries made in the bank record

were made under his direction and supervision and were correct.

In the case of Cheesebourge v. State, 157 S. W. 761, an express order had been forged, and this Court in passing upon a similar question as the one here presented, said: "It was entirely permissible for this witness to testify that the entries in the express book were made by J. O. Edge. He was the agent; Edge was working under him, and he knew his handwriting. It was also permissible for the witness to testify that this book was correctly kept. While the entries were made by Edge, yet it was done under his direction and under his instruction." See, also, Busby v. State, 103 S. W. 638.

Bills of exception numbers 19, 24, 41, 42, and 43, will be considered together, as they relate to the renting of a certain typewriter from the Remington Rand Company by Otis H. Gibson, one of the defendants, together with a specimen of a typewritten instrument made with a certain type of typewriter and offered as a standard for comparison.

We think this was admissible as a circumstance in connection with other circumstances proved in the development of the State's case, tending to show that other documents in evidence had been either changed or written with the same typewriter.

Bill of exception numbers 34, 38, and 40, will be considered together. Bill of exception number 38 complains of the testimony of the postmaster at Austin, Texas, to the effect that on the 8th day of November, 1935, appellant rented a box 5-3/4 x 10-1/2 x 14" deep, being box number 698. Bill number 34 shows that the witness D. R. Zachry, whose duty it was to dispatch the E. D. Reports to the Railroad Commission, testified that while he did not himself address the reports to the appellant at Austin, Texas, P. O. Box 698, he saw some so addressed. The witness Trotter testified that he was employed by the American Liberty Pipe Line Company; that from September 1, 1935, to May 1, 1936, he worked for the Channel Transport & Marketing Co.; that he kept the crude oil records and made the E. D. Reports to the Railroad Commission, and forwarded them to the Railroad Commission at Austin, Texas, in care of M. D. Carter, P. O. Box 698.

It occurs to us that, in view of the fact that appellant was an employee of the Railroad Commission, that he had rented a box at the post office, being box 698, and had written letters requesting that all E. D. Reports be forwarded to the Railroad Commission of Texas at Austin, in care of M. D. Carter, P. O. Box 698, said testimony was clearly admissible as a circum-

stance in the development of the State's case, seeking to establish a conspiracy among the appellant and his confederates.

The significance of securing the post office box is apparent when it is understood that the E. D. Reports were the monthly reports from the individual producers to the Railroad Commission showing the amount of oil run by them during each month, and the direction that the reports be forwarded to said box, was to make certain that they could be inspected by appellant before they reached the Railroad Commission.

Bill of exception number 50 complains of the admission as evidence of a report of the Channel Transport and Marketing Co. for the months of October, November, and December, 1936, being designated as exhibits numbers 58, 59, and 60. These reports disclosed the number of barrels of oil taken and transported by the Channel Transport and Marketing Company from the Adeloil Company by virtue of forged tenders.

We are of the opinion that this evidence was admissible.

Bills of exception numbers 51 and 52 relate to similar reports of oil taken and transported by the Channel Transport and Marketing Company, except the same are for different months. We think this testimony was likewise admissible.

Bill of exception number 58 complains of the admission of testimony given by Fred M. Miller, an expert on questioned typewritten documents. We think this witness had shown sufficient qualifications to express an opinion on the questioned documents by comparing them with one written with a certain typewriter which had theretofore been rented from the Remington Rand Company at Houston, Texas, by Otis H. Gibson.

Bills of exception numbers 60 and 62 complain of the admission of testimony of Mrs. Hill, to the effect that in October, 1935, she worked for Mr. D. D. Feldman and Mr. A. D. Adelson, who owned several companies; that she kept the books for several of the companies, among them the Adeloil Company, the Feltex Oil Company, the Adeltex Oil Company, and the Felson Oil Company. She further testified that according to the records of said companies as kept by her, the royalties on the excess production of oil was not paid to the royalty owners. We think this testimony was admissible to show that these companies, of which Feldman, a codefendant, was interested, were trying to keep the royalty owners from knowing that oil was being produced in excess of the allowable, and to prevent knowledge of the fact from being brought to the attention of the Railroad Commission or any of its agents or employees.

Bill of exception number 63 complains of the admission in evidence of certain certified copies of orders made and promulgated by the Railroad Commission of Texas. The objections urged thereto are in substance the same as those urged against the admission of other certified copies of orders and schedules of the Railroad Commission, which we have already discussed, and for the reasons there stated, this bill is overruled.

Bill of exception number 64 complains of the testimony of R. C. Horn, relating to a meeting of witness with H. E. Hines, president of the Hi-Grade Oil Company; C. S. Atchinson, president of the South Texas Development Company; Otis H. Gibson and R. C. Sewell. At this meeting, Gibson asked Horn, Hines, and Atchinson if they wanted to run some back allowable oil, and that if they did, he, Gibson, could get the tenders. Mr. Sewell advised his client, Horn, at that time not to go into it unless the tenders were obtained in the right way.

Bill of exception number 65 complains of the testimony of C. S. Atchinson to the effect that in June or August, 1935, he met Gibson and Gibson asked him if he was satisfied with the amount of oil that he was allowed to run in the Conroe field, and when told that he was not, he asked the witness if he would like to increase the amount. He was told by the witness that he would. Gibson came back later in August or September and again discussed the subject of running excess oil, at which time he stated that he had connections that looked favorable. Later, the witness again saw Gibson, at which time Hines, Horn, and Sewell were present. Gibson said he could secure tenders to run the oil in excess of the allowable, and that everything was all right. Mr. Sewell inquired of him (Gibson) whether the tenders which they were procuring or intended to procure were being gotten in the right way, and whether they could be laid before the Railroad Commission. Gibson replied that he did not care to answer that question as he could not divulge it.

We think all of this testimony incorporated in bills of exception 64 and 65 is clearly admissible as a circumstance tending to show an intent on the part of Gibson to procure forged tenders by which the different oil companies of which some of the defendants were officers, could run oil in excess of the allowable, and thus perpetrate a fraud upon the Railroad Commission.

Bills of exceptions numbers 67 and 68 relate to the introduction in evidence of the records of the Baker Hotel at Dallas, Texas, and the Roosevelt Hotel in Waco, Texas, showing that

on February 23 and March 10, 1936, the defendant occupied a room at the named hotels. Appellant objected because the record had not been sufficiently identified, and that the proper predicate had not been laid for its introduction, and that the same was hearsay.

The bill shows that the records were not read by the jury at the time, but were merely proved up as the records kept by the hotels; consequently the same could not have prejudiced the appellant's rights.

By bill of exception number 83, appellant complains of the introduction in evidence of an order of the Railroad Commission dated June 18, 1935, and shown by the testimony of C. F. Petet to be an original order of the commission. Appellant objects on the ground that it does not purport to be an original, that the original would be the best evidence; that its absence is not accounted for; that it does not appear to have been promulgated as required by statute, etc. The objection made to the introduction thereof, is not a certificate by the court of the truthfulness of matters stated in the objection. Hence the bill of exception is incomplete and presents no reversible error. See Elliott v. State, 111 Texas Crim. Rep. 534, 15 S. W. (2d) 648; Grigsby v. State, 119 Texas Crim. Rep. 240; Watkins v. State, 102 Texas Crim. Rep. 219, 277 S. W. 397; Nantz v. State, 103 Texas Crim. Rep. 285, 280 S. W. 581.

By bill of exception number 71, appellant complains of the testimony of G. W. Fielder, an employee of the Southwestern Bell Telephone Company at Houston, Texas, together with certain records kept by the company, which showed telephone calls as follows: A telephone call from telephone number J-22,127 in Houston, Texas, to Neal Powers at Tyler, Texas, which was charged to Adelson; another call from the same place on the same date to Frank Bennett at Dallas; a call on April 5 from Austin by Gibson to Adelson at telephone number J-22,127; a call on April 7 from J-22,127 to C. S. Farmer, attorney at law in Waco. On the same date, Bennett called Austin, Long Distance 112, room 608, Stephen F. Austin Hotel.

Appellant objects to all this on the ground that the same was irrelevant and immaterial; that it was hearsay and took place after the termination of the conspiracy; that Powers and Farmer are not charged in the indictment as coconspirators.

If this testimony stood alone, it would appear to be irrelevant and hearsay. However, a different question is presented when the same is considered in connection with the great number of telephone calls which Gibson made to appellant at vari-

ous points in Texas; those by Bennett to Gibson; by Bennett to Farmer; by Gibson to Farmer; by Gibson to Powers, and by Adelson to Gibson, etc., together with the testimony of Culberson to the effect that he and Farmer were reared in the same community; that they were life-long friends, and that on the 6th of April, while he, the witness, was in Fort Worth at the Blackstone Hotel, Farmer made two visits to his room; that on the last visit, Farmer offered to pay Culberson at the behest of his client, Bennett, $2,500 if he would stay on the job and cover up some of the tenders; for which offer, Culberson severely rebuked Farmer. Within a very short time, Culberson overheard a conversation between Farmer and Bennett over the telephone, in which Farmer told Bennett that he had had hell up there, and had been unable to do anything; that Bennett inquired of Farmer if he had offered him money, to which Farmer replied: "Hell yes; all the money and all the oil wells in the world will not do any good; he is going through with it. He has all of our names, and the balance of them."

Lillian Odom testified that on the night of April 6, she worked as telephone operator at the Blackstone Hotel at Fort Worth and that she listened in on a call by Farmer from room 1129 of said hotel to Neal Powers at Tyler. She heard Farmer tell Powers that he was having a lot of trouble at Fort Worth; that they had tried money and it did not do any good. She heard him tell Powers to hold the line; that he wanted him (Powers) to talk to Otis, who said: "We have got to do something;. we have got to get him out of office," and inquired of Powers if he could fly to Dallas the next morning and meet him.

When all of this testimony is taken in connection with the great number of calls and telephone conversations, it tends to show that the parties charged sensed the danger ahead of them; that they realized that Culberson had struck the trail which led to the rendezvous of an unholy alliance. Hence the frantic efforts to suppress their pursuit by the agents of the State and obliterate the trail.

It occurs to us that this was a link in the chain of the many circumstances proved which tended to connect appellant with the offense charged. Ordinarily, proof of the existence of a conspiracy can not be established by direct and positive evidence; conspirators work in secret and under cover; hence, the law has provided that resort may be had to circumstantial evidence. In such cases, greater latitude is allowed than otherwise, and the command of the law is "Turn on the light."

What we have said in the discussion of this bill also applies to bills numbers 72, 73, 74, and 75.

Appellant addressed a great number of objections to the court's main charge. We are unwilling to discuss but one, because it occurs to us that when the charge, together with the specially requested instruction which was given by the court, are considered as a whole, it fairly and adequately presents the law of the case applicable to the facts.

One of appellant's main objections relates to the court's charge on circumstantial evidence, which reads as follows: "You are instructed that the State in this case relies upon circumstantial evidence for a conviction, and to warrant a conviction upon such evidence, every fact necessary to establish the guilt of the defendant must be proved by competent evidence beyond a reasonable doubt, and the facts and circumstances proved should not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis, or conclusion, than that of his guilt, and producing in the minds of the jurors a reasonable and moral certainty that the accused committed the alleged offense."

In the case of Chitister v. State, 33 Texas Crim. Rep. 635, the court gave an almost identical instruction to the jury on the law of circumstantial evidence as the one here complained of. The Court in discussing the particular question said: "There is no prescribed form for such instruction. If the ideas conveyed by the charge are correct, and so expressed as to be understood by the jury, then it is sufficient." See, also, Porch v. State, 50 Texas Crim. Rep. 335; Galloway v. State, 44 Texas Crim. Rep. 230.

Appellant also contends that the court erred in permitting the introduction of acts and declarations of the alleged co-conspirators in the absence of the appellant, and after the consummation of the alleged conspiracy; that such act on the part of the court was contrary to the well established rules of evidence.

We recognize the rule above announced as well settled and established in this State, but it is also true that any act or declaration of a conspirator, although in the absence of a co-conspirator, in pursuance of a consummation of the original design, is admissible. In the instant case, the conspiracy was alleged to have been entered into in October of 1935, and in pursuance of said conspiracy, the parties seem to have acted together for a period of more than six months; hence, the conspiracy continued in existence for said time and any act done or any declaration made during the continuance of said conspiracy by any one or all of the conspirators was admissible as evidence, and any act done or performed in an effort to conceal

and cover up the unholy alliance, which in its nature was a part of the original design, became admissible against each and all of the coconspirators.

Appellant insists that the evidence is insufficient to justify and sustain his conviction. Without discussing and assimilating all the circumstances proved, we deem it sufficient to say that we are of the opinion that the same is sufficient to support the jury's verdict.

Appellant did not testify or offer any affirmative defense.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellant has filed an exhaustive motion for a rehearing herein, alleging as his first ground for the granting of such motion the following: "(1) That the fourth count in the indictment is fatally defective because it fails to allege that the Railroad Commission had, prior to the time of the alleged offense, duly made and promulgated an order or regulation requiring the use of tenders in the transportation of oil and prescribing the form or forms of such tenders."

It will be seen from a perusal of the indictment, as set forth in the original opinion, that the offense charged is not the *making* of a false instrument, but is a conspiracy to use a tender of the Railroad Commission to which had been forged the name of E. L. Green, Jr., for the purpose of inducing the parties named in the indictment to receive and transport certain crude petroleum. It will be noticed that the indictment herein charges that the instrument itself was already in existence, and the intent to defraud was in conspiring to knowingly use this instrument after the name of E. L. Green, Jr., had been forged thereto. We can see no reason why there should be an allegation in this indictment that the Railroad Commission had duly made and promulgated an order or regulation to require the use of tenders in the transportation of oil, and prescribing the form therefor, in view of the direct averment that the instrument upon which the indictment was predicated was a ten-

der of the Railroad Commission. Stated in another way, the indictment embraces sufficient allegations to show that the instrument to which the name of E. L. Green, Jr., was forged was a tender of the Railroad Commission.

The second complaint set forth in said motion is: "(2) That the fourth count in the indictment is fatally defective because it does not set out *in hæc verba* the tender which it charges the appellant and his alleged confederates conspired to use."

It is not necessary in charging a conspiracy to commit an offense to allege the offense intended with the fullness or particularity necessary in an indictment charging only the commission of the intended offense. We quote from Buckhannan v. State, 252 S. W. 500, as follows: "All of the authorities in this State seem to hold that it is not necessary, in alleging a conspiracy to commit an offense, to allege the offense intended with even the fullness or particularity necessary in an indictment charging only the commission of the offense thus said to be in contemplation. This rule will be found announced in the early case of Brown v. State, 2 Texas App. 115, and seems to have been followed in the few cases charging this offense." Also see 9 Tex. Jur. 389. It will be observed that the tender was substantially described in the indictment with sufficient accuracy to apprise the appellant of the criminal act he is charged with entering into a conspiracy to commit.

In paragraph three of such motion the complaint is made that the conspiracy charged was to knowingly use a simulated tender, whereas the statute prohibits the use of a tender validly issued to which an agent's name has been forged. As already stated, we think the indictment clearly avers the existence of a tender of the Railroad Commission, and shows that the name of E. L. Green, Jr., an agent of the commission, had been forged thereto. We find nothing in the indictment indicating that the pleader was charging a conspiracy to use a simulated tender; but instead that he intended to use a tender such as the Railroad Commission had authorized to which the signature of their agent had been forged, and that if the signature thereto had been genuine, same would have lawfully authorized the transportation of the oil in question.

The fourth complaint set forth is: "(4) That the fourth count in the indictment is fatally defective because it is not charged that the alleged conspirators confederated to use *as true* a false tender."

The count in the indictment itself must be taken as a whole, and the allegations therein contained, in our judgment, are not

susceptible to the criticism leveled at it in paragraph 4. We note that the indictment contains, among other averments, the following: "Which tender, if genuine, would be a written permit for the transportation of such oil, approved and issued under the authority of said Railroad Commission."

We confess that this matter has given us some concern in view of the fact that it is new legislation which has not heretofore been construed by this Court. The original opinion itself of necessity was lengthy because of the large record and the many bills of exceptions reserved and questions raised. We therefore pretermit a lengthy discussion of the above matters because of the fact that same have been written upon and thoroughly considered on the original submission. We adhere to the conclusions expressed in the original opinion, and this motion will therefore be overruled.

NOTE—The above case was not reported in Volume 134 of the TEXAS CRIMINAL REPORTS because at time said volume was published an appeal had been taken to Supreme Court of the United States, which appeal had not been acted on, and mandate of said Supreme Court, dismissing said appeal, was not received until November 14, 1938.