**HENDERSON, Administrator, Office of Price Administration, v. SMITH–DOUGLASS CO., Inc., et al.**

District Court, E. D. Virginia.

March 6, 1942.

Russell T. Bradford, Asst. U. S. Atty., of Norfolk, Va., Talbot Smith, Chief, Civil Litigation Unit, and David Persinger, Atty., both of Washington, D. C., for plaintiff.

W. R. Ashburn, of Norfolk, Va., for defendant.

WAY, District Judge.

The Court's conclusions are that title to the tires in question was acquired by the defendant, Smith-Douglass Company, Incorporated, in good faith in January, June and August of 1941, that the last payment was made in September 1941, and that there was no intention or thought of hoarding. In fact, the transaction occurred long before the promulgation of the regulations now under consideration. The record, therefore, is clear beyond question that the transaction was a usual, normal transaction, similar to such as had occurred between the two concerns on a number of prior occasions.

It is equally clear, however, that delivery of the tires by the seller to the buyer had not been made and that under the contract of sale it was the duty of the seller to deliver the tires to the purchaser.

With reference to the authority of the Administrator to take the action which the Court concludes he has taken, I think that the Act of May 31, 1941, 41 U.S.C.A. preceding § 1, amending the Act of June 28, 1940, conferred upon the President ample power and authority to do what has been done. That power and authority was pursuant to executive order No. 8875, transferred to an agency acting under the President. As the result of further delegations following executive order No. 8875, the power is now vested in the Administrator; that is to say, there was vested in the Administrator prior to the regulations which he issued, the same power and authority which the amending Act of May 31, 1941, gave the President.

682

■ The objects of the regulations now under consideration are obvious. One of the purposes was to stop transactions in new tires, certainly until such time as the Government could determine its need for new tires in the prosecution of the war. It is but natural that a regulation as far-reaching and as drastic as that would result in some hardships. All measures in the midst of war result in hardships to at least some of the citizens of the country. I am persuaded, although it is not for the Court to say what policy or regulation ought to be adopted in such a situation, that if any milder regulations had been promulgated than those in question, they very probably would have resulted in many attempted evasions in the way of alleged prior sales which never, in fact, had occurred. It is unfortunate that the present defendant happened to be just across the line, in the twilight zone, so to speak, but as already said, under the contract of sale, delivery by the seller was a part of the transaction. Until delivery by the seller to the buyer occurred the transaction was to that extent incomplete. The tires still remained in the possession of the seller, upon whom was the duty to make delivery when required to do so by the buyer.

■■ The Court may be inclined to be rather liberal in its views of situations like the present, but it is doubtful that courts ought to be overzealous to search Acts of Congress, executive proclamations and regulations where only property is involved, to find more or less technical grounds from which to declare the regulations invalid or inoperative in cases before them. Undoubtedly, it is the duty of the Court to protect the rights of citizens under the Constitution where such jurisdiction is conferred upon it under the Constitution, and to see that citizens are not deprived of their property without due process of law, even for a public use; but, at the same time, I do not think the Court should be too zealous in reaching out to find grounds upon which to invalidate regulations of the type involved here, in the face of a pressing national emergency such as every sane person in this country knows exists.

Going back a little, it has been but three months since we suddenly heard over the radio that we had been violently attacked without provocation or warning by one of the most dangerous military powers on earth, although a special representative of that power was in the national Capitol apparently endeavoring to bring about an amicable settlement of the differences between the two countries. Again, we had hardly got our breath back from that shock before war was declared upon us by Germany and Italy.

■ In such a situation it would be a remarkable thing if the authorities to whom we have delegated the power to conduct our Government and our national defense could not have a reasonable time after they have frozen assets such as everybody concedes to be essential to the prosecution of the war, to determine whether or not the Government should requisition those assets or release them to private use. It is only fair under such circumstances to assume that the Government in due time will either acquire the tires for public use or determine that they are not essential or desirable for that purpose and release them to the owner for his use.

The Court would be going pretty far if it should attempt to interfere with the right of the Government to determine what it should finally do. Notwithstanding the very able argument on behalf of the defendant, I still have faith that our Government, as early as it reasonably can under the circumstances, will do justice by its citizens whose property is thus affected. In the past it has endeavored to do justice and there is every reason to believe it will make the same effort in the future.

My conclusion, Gentlemen, is, without prolonging the discussion, that the plaintiff is entitled to the relief for which he prays, and that the injunction should be made permanent. However, if the Administrator shall determine that the tires in question are not needed for public use, the injunction can then be dissolved and delivery of the tires made by the seller to the defendant.