946

## UNITED STATES v. MAVIGLIA et al.

## SAME v. KOPPENAL.

District Court, D. New Jersey.

Dec. 8, 1943.

Peter Hofstra, of Paterson, N. J. (Joseph V. Fumagalli and Joseph J. De-Luccia, both of Paterson, N. J., of counsel), for defendant Arend Koppenal for the motion.

Charles M. Phillips, U. S. Atty., and Vincent E. Hull, Asst. U. S. Atty., both of

Trenton, N. J., and William F. Johnson, Enforcement Atty. Office of Price Administration, of Paterson, N. J., for the United States.

FORMAN, District Judge.

The defendant, Arend Koppenal, is charged, with others, in indictment No. 1470c with conspiracy to defraud the United States in violation of Sec. 88, Title 18 U.S.C.A., and in an information (No. 1445c), with the unlawful possession of gasoline ration coupons and with the unlawful possession of counterfeit gasoline ration coupons and with the unlawful transfer of gasoline in violation of Secs. 1394.8177(c), 1394.8178(c) of Ration Order No. 5C of the Office of Price Administration, which provide in substance that no person shall have in his possession coupons or coupon books, except those to whom such coupons or coupon books were issued in accordance with the provisions of Ration Order No. 5C, and that no person shall transfer or possess counterfeit coupons or coupon books. The authority for the Ration Order No. 5C stems from Title III of the Second War Powers Act of 1942, 50 U.S.C.A. Appendix, § 633, which provides criminal penalties for the violation of any rule, regulation or order issued thereunder. It was this Act which conferred upon the President the power to allocate materials whenever in his judgment there is a shortage of supply. The manner and method of those allocations is authorized to such extent as the President shall deem necessary and appropriate in the public interest and to promote the national defense. This is a motion to strike the indictment and information, as they involve the defendant, Arend Koppenal, and the only question raised here is a challenge to the constitutionality of this Act.

The Second War Powers Act has been upheld by the courts as constitutional.[1]

Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446; Home Bldg. & L. Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481; and Wichita R. v. Public Util. Comm., 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124, are cases cited by the defendant in support of his argument that the power to make rules

---

[1] United States v. Randall, 50 F.Supp. 139; United States v. Wright, D.C., 48 F.Supp. 687; Henderson v. Smith-Douglass Co., D.C., 44 F.Supp. 681. See United States v. Tire Center, D.C., 50 F.Supp. 404; Brown v. Bernstein, D.C., 49 F. Supp. 728; Henderson v. Bryan, D.C., 46 F.Supp. 682.

and regulations concerning the allocation of materials was delegated to the President under this Act without providing a standard or guide within which to limit the power so delegated. The Acts in those cases were passed during times of peace. The Act in question was passed after the declaration of the present war and the powers granted to the President under the Act were considered necessary to aid in the prosecution of the war.

It is interesting to note that a reference to one of the very cases cited by the defendant, Home Bldg. & L. Ass'n v. Blaisdell, supra [290 U.S. 398, 54 S.Ct. 235, 78 L.Ed. 413, 88 A.L.R. 1481], discloses, in a paragraph succeeding the excerpt therefrom quoted by him, the following language by Chief Justice Hughes: "* * * The constitutional question presented in the light of an emergency is whether the power possessed embraces the particular exercise of it in response to particular conditions. Thus, the war power of the federal government is not created by the emergency of war, but it is a power given to meet that emergency. It is a power to wage war successfully, and thus it permits the harnessing of the entire energies of the people in a supreme co-operative effort to preserve the nation. But even the war power does not remove constitutional limitations safeguarding essential liberties."

Can the exercise of power under this legislation be considered beyond that given to the government to meet the emergency of war and the requirements necessary to wage that war successfully? Is there justification for the criticism here that the alleged delegation of power by Congress to the Executive has not been accompanied by standards set by Congress to measure discretion vested thereby so that there has been an infringement of constitutional guarantees of *essential* liberties in the face of the impact of modern total war? We think not. The Act was invoked to regulate among other things, and in this case particularly, the possession and use of gasoline—a prime, if not the most potent, factor in the prosecution of this war. Sharp curtailment in the swift and effective means of mobilization of the material and manpower of the nation well might result in the loss of the war itself and with it the complete and irrevocable dissolution of all of our *essential liberties*. In its zeal to protect semblances of them

the nation should not leave itself vulnerable to their loss entirely. The language cited by defendant from the case of Ex parte Milligan, 71 U.S. 2, 4 Wall. 2, 18 L. Ed. 281, brooks no argument. It was used in connection with the protection of a citizen by the court in his right to be tried by a civil tribunal for offenses alleged to have been committed by him while he was not engaged in any military service and for which he had been sentenced to death by a military commission. That there was a question of the invasion of his "essential liberty" cannot be doubted. The analogy with the effort to execute the Act in the case at bar fails.

The contention of the defendant is fully and satisfactorily answered in the case of United States v. Wright, D.C., 48 F.Supp. 687, 690. In that case the court, in its discussion upholding the constitutionality of this Act, said:

"The Act, as amended, meets the proper tests in deciding the question of delegation: (1) The statute contains a clear statement of the policy and purpose which Congress seeks to accomplish; and (2) it contains an intelligible statement of the standards by which that purpose is to be worked out.

"A reading of the Act under inquiry discloses its purpose, viz.: 'To expedite the national defense', 'to further expedite the prosecution of the war', 'to establish priorities and allocate material', in order to ensure 'the fulfillment of requirements for the defense of the United States'. Who could ask for a clearer expression of purpose?" 48 F.Supp. at page 690.

The validity of the precise Rationing Regulations and Orders under the Act, the violation of which the defendant is charged, were considered and fully discussed in the case of United States v. Randall, D.C., 50 F.Supp. 139, 141, wherein it is stated:

"The purpose of this enactment was to promote the general welfare and allocate the control of gasoline supply that was necessary for the defense of the United States. The President could not fulfill these functions individually but had to do so through various agencies.

"The Executive Orders of the President of the United States, and the rules and regulations prescribed by the administration office of Price Administrator issued pursuant thereto, are valid and effectual and

do not violate any provision of the Constitution of the United States or any laws of the United States."

The motion to strike the indictment and information is denied.